# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.P.-1, M.P., and D.P.-2**

**No. 18-0100** (Greenbrier County 17-JA-56, 57, and 58)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.P., by counsel R. Grady Ford, appeals the Circuit Court of Greenbrier County's January 5, 2018, order terminating her parental, custodial, and guardianship rights to D.P.-1, M.P., and D.P.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Kristopher Faerber, filed a response on behalf of the children, also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and in terminating her parental, custodial, and guardianship rights to D.P.-1, M.P., and D.P.-2.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed a child abuse and neglect petition against petitioner and her husband, R.P., in regard to four children: T.W., D.P.-1, M.P., and D.P.-2.[2] In its petition, the DHHR specifically alleged that T.W. had significant bruising on her arm and the back of her thigh, which she disclosed was caused by petitioner. The DHHR alleged that then sixteen-year-old T.W. was afraid to live in the home due to petitioner's physical abuse, that petitioner had a drinking issue and would get violent after drinking, that T.W. reported her bruises were from punishment, and that T.W. related that she had been similarly punished by petitioner before. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as D.P.-1 and D.P.-2, respectively, throughout this memorandum decision.

[2]Petitioner was the guardian of T.W., who is not at issue in this appeal, and the custodian of D.P.-1, who is her severely disabled biological granddaughter. Petitioner was the adoptive parent of M.P. and D.P.-2.

1

DHHR also alleged that petitioner was emotionally abusive and wanted to terminate her seven-year guardianship of T.W. The DHHR stated that D.P.-1 was nonverbal and could not disclose abuse, and that M.P. did not disclose any abuse. The DHHR also reported that a Child Protective Services ("CPS") worker spoke to T.W.'s half-sister, J.W., who reported that she had seen bruising on T.W. before and provided a recorded video of petitioner coaching M.P. in how to respond to law enforcement and CPS workers. According to the DHHR, T.W. had a history of self-harm and running away in order to escape the major mental, physical, and emotional abuse that she suffered under the care of petitioner and her husband. Finally, the DHHR alleged that petitioner and her husband were the subjects of ten CPS referrals over the preceding eight years, that petitioner perpetrated domestic violence against T.W. through her physical and verbal abuse, and that she failed to protect the children by coaching M.P. in how to respond to law enforcement and CPS. Petitioner waived her preliminary hearing.

The DHHR filed an amended petition in August of 2017 in order to add the biological parents of T.W. and D.P.-1. However, the DHHR also included new allegations against petitioner. According to the DHHR, M.P. underwent a third interview in which he disclosed that he witnessed a physical altercation between petitioner, her husband, and T.W. in which the husband held T.W.'s hair while petitioner hit her. M.P. also disclosed that petitioner and her husband hit him across the face with their hands and that petitioner hit him and D.P.-2 with a spatula.

In September of 2017, the circuit court held an adjudicatory hearing during which petitioner testified that she never abused the children. According to petitioner, T.W. had a history of behavioral issues and had been hospitalized multiple times, most recently spending a year in a facility in Virginia. Petitioner testified that after being released, T.W.'s bad behavior significantly increased and she ultimately requested that they relinquish their guardianship rights so that she could live with her half-sister. Petitioner and her husband agreed and initiated proceedings to relinquish the guardianship rights. However, the hearing was continued and petitioner explained that T.W. was angry that the issue had not resolved and made the allegations against them the following day. Petitioner also testified that she believed T.W. told M.P. that she was "going to get him taken away" and stated that T.W. often blamed others when things did not go her way.

T.W. testified regarding the abuse perpetrated against her and stated that she had seen petitioner and her husband hit M.B. as well. T.W. stated that, contrary to the husband's assertions, she had not collaborated with M.P. to make false allegations against petitioner and her husband and had not spoken to M.P. since the day they were removed from the home. A CPS worker testified regarding her investigation and stated that she did not consider evidence of T.W.'s wanting to leave petitioner's home in reaching her conclusion that the children were abused. Rather, the CPS worker testified that T.W.'s bruises led her to file the petition due to their size and location, which indicated abuse. The CPS worker admitted that she observed no evidence of abuse apart from T.W.'s bruises. T.W.'s biological grandmother testified that she had custody of T.W. until she was nine years old when, due to T.W.'s false allegations of abuse against her, T.W. was removed from the home. Child abuse and neglect proceedings were initiated against the grandmother but ultimately dismissed. The grandmother was unable to take T.W. back into her home for unrelated reasons but testified that she often visited T.W. in

petitioner's home over the years and never observed any abuse. After hearing evidence, the circuit court adjudicated petitioner and her husband as abusing parents. Petitioner subsequently filed a motion to dismiss the petition with regard to D.P.-1 and a motion for a post-adjudicatory improvement period.

The circuit court held an initial dispositional hearing in October of 2017. Petitioner admitted that she raised her voice at the children and testified that she would participate in an improvement period. However, petitioner continued to blame T.W. for the issues in the home. In fact, when specifically asked whether the issues occurring in the home were a result of T.W.'s behavior, petitioner responded in the affirmative. Petitioner admitted that the husband restrained T.W. by holding her hair during an argument but denied that she hit T.W. When asked what aspects of her parenting she could improve upon, petitioner responded that she could use training in how to handle the children's behaviors and "issues." The circuit court held its ruling with regard to the improvement period in abeyance until petitioner could undergo a psychological evaluation.

In January of 2018, the circuit court held a final dispositional hearing. The circuit court ultimately denied petitioner's motion for a post-adjudicatory improvement period, finding that, despite her professed willingness to participate, petitioner failed to acknowledge her abuse of the children and instead blamed T.W. The circuit court also noted that petitioner underwent a psychological evaluation after the last hearing and continued to blame T.W. for the allegations of abuse. The psychologist opined that petitioner's prognosis for attaining minimally adequate parenting skills within the timeframe of the case was poor "largely due to the seriousness and pattern of the alleged abuse, [petitioner's] denial of responsibility for it, and apparent scapegoating of the children." As such, the circuit court found that petitioner did not demonstrate that she was likely to meaningfully participate in an improvement period given that she failed to accept responsibility for her actions. The circuit court further found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse in the near future and that termination of petitioner's parental, custodial, and guardianship rights was necessary for the children's welfare.[3] It is from the January 5, 2018, dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

_____

[3]The record shows that the circuit court terminated petitioner's guardianship rights to T.W. at an earlier hearing.

[4]Petitioner's and her husband's parental, custodial, and guardianship rights to the children were terminated below. The permanency plan for M.P. and D.P.-2 is adoption by their current foster family. At the initiation of the proceedings, D.P.-2's biological parents retained their parental rights. However, their parental rights have since been involuntarily terminated or voluntarily relinquished. Due to D.P.-2's disabilities, she is currently placed in a specialty care facility while the DHHR searches for a specialized foster care placement. The permanency plan for D.P.-2 is legal guardianship and the concurrent permanency plan is specialized foster care.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent against the weight of the evidence. According to petitioner, T.W. was a troubled youth "who was dead set on being freed from the custodial grasp of [petitioner.]" Petitioner argues that T.W. created a plan to leave petitioner's home by sending pictures of bruises to T.W.'s sister and claiming petitioner made them. Petitioner asserts the evidence demonstrates that she did not abuse and neglect the children and should not have been adjudicated as an abusing parent. We disagree. We have previously noted as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W.Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). Additionally,

[w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va. Code, 49-1-3(a) (1994) [now W.Va. Code § 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

While petitioner argues that the circuit court erred in adjudicating her as an abusing parent, a review of the record reveals that sufficient evidence existed upon which to find that petitioner abused the children. The DHHR presented the testimony of the investigating CPS

worker, who testified that she initiated the petition after seeing T.W.'s bruising. According to the CPS worker, the bruises were consistent with abuse due to their location and size. Pictures of the bruises were also submitted into evidence. The circuit court also heard testimony from T.W. concerning the nature and extent of petitioner's abuse. Petitioner insists that T.W. created an untruthful scheme to remove herself from petitioner's home; however, the circuit court was presented with the evidence, including inconsistencies in T.W.'s statements, and found that petitioner perpetrated domestic violence against the child. We have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make some determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, we decline to disrupt the circuit court's findings that T.W. was credible and her allegations were true. Moreover, due to petitioner's physical abuse of T.W. in the presence of the other children, the circuit court found that they were also abused. Therefore, we find that petitioner was adjudicated upon sufficient evidence and is entitled to no relief in this regard.

Petitioner also argues that the circuit court erred in terminating her parental, custodial, and guardianship rights. Specifically, petitioner argues that the circuit court found that she had only physically abused T.W. and exposed the other children to domestic violence. As such, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights to the children when petitioner's guardianship rights to T.W. had been dissolved, thereby correcting the conditions of abuse in the home. Petitioner asserts that the circuit court particularly erred in regard to D.P.-1, as petitioner insists that termination was not in the best interest of this child. We find petitioner's argument to be unpersuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The record establishes that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Throughout the proceedings, petitioner continually failed to meaningfully acknowledge that her actions constituted abuse and neglect. In fact, after requesting a post-adjudicatory improvement period, petitioner underwent a psychological exam wherein the evaluating psychologist opined that petitioner was unable to attain minimally adequate parenting within the timeframe of the case due to her failure to accept responsibility for her actions and "scapegoating" of the children. Moreover, in her brief on appeal, petitioner continues to blame T.W. for the initiation of the underlying proceedings. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable

5

and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, petitioner's complete lack of acknowledgment of her abusive actions rendered her unable to follow through with any other rehabilitative efforts.

Further, petitioner's assertions that the only allegations of abuse pertained to T.W. and not the other children are inaccurate. The circuit court found clear and convincing evidence that petitioner engaged in domestic violence with T.W. in the presence of the other children and, as such, they were abused. In fact, M.P. reported that he observed the domestic violence perpetrated against T.W. by petitioner and her husband. While petitioner insists that the conditions of abuse have been remedied by the removal of T.W. from the home, we find that her argument demonstrates that she fails to take responsibility for her actions and, as such, has not adequately addressed the conditions of abuse. Accordingly, we find that the circuit court correctly determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. As mentioned above, circuit courts are to terminate parental, custodial, and guardianship rights upon such findings.

Lastly, because permanency has not been achieved for D.P.-1, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive

home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 5, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 11, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.